UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

    - against -

LAWRENCE BROUSSARD,

                Defendant.

------------------------------------X

05 Cr. 9-01 (RWS)

SENTENCING OPINION

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/27/11
```

**Sweet, D.J.**

      On August 25, 2008, Lawrence Broussard, a/k/a "Julie Whop", ("Broussard" or "Defendant") pleaded guilty to (1) one count of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(j); (2) one count of conspiracy to commit robberies, in violation of 18 U.S.C. § 1951; (3) one count of use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (c)(2); (4) conspiracy to distribute heroin and marihuana, in violation of 21 U.S.C. § 846; and (5) one count of possession of a firearm after three previous convictions for violent felony or drug offenses, in violation of 18 U.S.C. §§ 922(g)(1), 924(e).  For the reasons set forth below, Broussard will be sentenced to life imprisonment to be

1

followed by 5 years' supervised release.  Broussard will also be required to pay a special assessment of $500.

**Prior Proceedings**

On January 4, 2005, Information 05 CR 9-01 (RWS) was filed in the Southern District of New York.  Count 1 charges on August 18, 1995, in the Southern District of New York, Broussard participated in the robbery of a gambling parlor located at 3581 Laconia Avenue, Bronx, New York, during which Oswald Potter was shot to death with a firearm, in violation of 18 U.S.C. § 924(j).  Count 2 charges that from 2003 through late 2004, in the Southern District of New York, Broussard agreed with others to commit robberies of individuals engaged in businesses that affected interstate commerce, in violation of 18 U.S.C. § 1951. Count 3 charges that from 2003 through late 2004, in the Southern District of New York, Broussard, during and in relation to the robbery conspiracy charged in Count 2, did use and carry firearms and, in furtherance of such crime, did possess firearms which were brandished, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (c)(2).  Count 4 charges that from about mid-2003 through late 2004, Broussard and others conspired to distribute and possessed with intent to distribute 100 grams and

2

more of  heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1),
and 841(b)(1)(B) and 50 kilograms of marijuana, in violation of
21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(D), all in violation
of 21 U.S.C. § 846.  Count 5 charges that on December 7, 2004,
in the Southern District of New York, Broussard, after having
been convicted on July 15, 1998, in New York Supreme Court,
Bronx County, of Criminal Possession of a Loaded Firearm in the
Third Degree, and having had three previous convictions for a
violent  felony  and  a  serious  drug  offense,  committed  on
occasions  different  from  one  another  as  follows:  (i)  a
conviction on January 5, 2000 in New York Supreme Court, Bronx
County, for Robbery in the First Degree; (ii) a conviction on
July 6, 1998 in New York Supreme Court, Bronx County, for
Criminal Sale of a Controlled Substance in the Third Degree; and
(iii) a conviction on July 6, 1998 in New York Supreme Court,
Bronx County, for Criminal Sale of a Controlled Substance in the
Third Degree, did possess a loaded 9-mm Hi-Point semi-automatic
handgun, which had previously been shipped and transported in
interstate commerce, in violation of 18 U.S.C. §§ 922(g)(1),
924(e).

On February 25, 2009, Broussard appeared in the
Southern District of New York and pleaded guilty to Counts 1

3

through 5.

Broussard's sentencing is currently scheduled for April 28, 2011.

## The Sentencing Framework

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines.    Thus, the sentence to be imposed here is the result of a consideration of:

    (1)  the nature and circumstances of the offense and
         the history and characteristics of the defendant;

    (2)  the need for the sentence imposed --

        (A)  to reflect the seriousness of the offense,
             to promote respect for the law, and to
             provide just punishment for the offense;

        (B)  to afford adequate deterrence to criminal
             conduct;

        (C)  to protect the public from further crimes of
             the defendant; and

        (D)  to provide the defendant with needed
             educational or vocational training, medical

4

care, or other correctional treatment in the
most effective manner;

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range
established for --

(A)   the applicable category of offense committed
by the applicable category of defendant as
set forth in the guidelines . . .;

(5)   any pertinent policy statement . . . [issued
by the Sentencing Commission];

(6)   the need to avoid unwarranted sentence
disparities among defendants with similar
records who have been found guilty of
similar conduct; and

(7)   the need to provide restitution to any victims of
the offense.

18 U.S.C. § 3553(a).   A sentencing judge is permitted to find
all the facts appropriate for determining a sentence, whether
that sentence is a so-called Guidelines sentence or not.   See
Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the
Presentence Investigation Report ("PSR") with respect to
Broussard's personal and family history.

**The Offense Conduct**

The following section is comprised partially of narrative presented by the Government, an edited excerpt of the Complaint filed in this case, and other information from an interview of the Assistant U.S. Attorney (AUSA) assigned to handle this case.  These crimes were investigated by a detective with Bronx Homicide Task Force of the New York City Police Department ("NYPD").

**Count 1**

Oswald Potter was shot and killed on August 18, 1995, inside an illegal gambling parlor that was connected to a deli located at 3581 Laconia Avenue, near 213th Street, in Bronx, New York.  Potter was shot while attempting to disrupt a gun-point robbery of the gambling parlor by two robbers.  Potter died shortly after he was shot.  Within days, Edward Garry, who was believed to be the shooter of Oswald Potter, was arrested by the NYPD and charged by the Bronx District Attorney's office with Potter's homicide.  On December 17, 1995, Garry was convicted of intentional murder and was sentenced to 25 years' to life imprisonment.

Subsequent investigation of the above case revealed that Broussard participated in the robbery and the murder of Oswald Potter; specifically, the planning and execution of that robbery. It was learned that Broussard had met up with a childhood friend, Brent Mason, earlier in the day and that he and Mason met two other individuals, "Pito" and "Flip," both young Hispanic males, while buying marijuana in the vicinity of East 163rd Street and Kelly Avenue, in Bronx, New York. The four men, Broussard, Mason, Pito, and Flip entered a dark-colored compact vehicle and drove around looking for robberies to commit. During their casings of the area, Pito drove the car, Flip was in the front passenger seat, and Broussard and Mason rode around in the back seat of the vehicle.

The first robbery they attempted to commit that day was of an illegal gambling parlor connected to a gas station near Gun Hill Road in the Bronx, New York. Because Broussard had attempted to rob this store on a prior occasion, he suspected that he would not be allowed in, so Flip agreed to attempt the robbery instead. Flip, possessing a firearm, tried to gain entry into the illegal gambling parlor, but the guard, apparently suspicious of Flip, refused him entry.

7

After the first failed attempted robbery, Mason suggested that they try to rob an illegal gambling parlor behind the deli on Laconia Avenue and 213th Street. Everybody agreed that this would be the next target, and they drove to the location. Once they arrived at the location, Broussard and Flip exited the vehicle. Broussard had a black 9-mm firearm that day, and that Flip had a silver revolver. After entering the deli, Broussard and Flip walked to the back of the store and entered a separate gambling area where some older males were playing cards. Flip took out his gun and fired at least one round into the ceiling, announcing that it was a "stick up" and demanding money from the people in the room. At that point, Broussard took out his gun as well. Once he did that, an older African American male (Oswald Potter) grabbed Broussard's gun and scuffled with Broussard. At that point, Flip shot the older African American male in the chest. Broussard then demanded money from the woman working behind the counter. The woman handed him a white plastic back that contained $500 to $600 in cash. Broussard and Flip then ran out of the gambling area and out of the deli, toward their vehicle.

8

As Broussard ran towards the car, he heard gunfire behind him, but did not see who was firing a gun.  Broussard blindly fired his gun in the direction of the deli, but did not believe that he hit anybody.  Broussard and Flip entered the vehicle, which immediately sped off.  Once inside their vehicle, Flip noted that he had been shot in the hand, and Broussard saw that Flip had covered his hand with white cloth, which was stained in blood.

The four robbers then drove to the Eastchester Projects at 1260 Burke Avenue in Bronx, New York.  They entered one of the buildings, and, in the staircase, Broussard counted the money and split it among the four participants in the robbery.  Broussard and Mason then departed, walking up Burke Avenue toward Gun Hill Road, while Flip and Pito left in the car.

**Count 2**

According to the Government, Broussard participated in five gunpoint robberies.  Details, as they are known to the Government, are presented below.

9

In 2004, Broussard and another co-conspirator committed a gunpoint robbery of a delivery driver possessing large quantities of cigarettes in Bronx, New York.

In the spring of 2004, Broussard robbed an illegal gambling parlor in Bronx, New York.

The Government advised that Broussard participated in three additional gunpoint robberies and noted that there were no known injuries as a result of any of the five robberies which are the subject of Count 2.  However, no additional information was available regarding these robberies.

**Count 3**

According to the Government, from about 2003 through late 2004, in the Southern District of New York, Broussard, during and in relation to the robbery conspiracy charged in Count 2, used and brandished firearms.

**Count 4**

10

According to the Government, from mid-2003 through late 2004, Broussard and others to distributed and possessed with intent to distribute at least 100 grams of heroin and 50 kilograms of marihuana.

**Count 5**

Based upon information provided by two New York State Parole Officers and two NYPD Officers who participated in the December 7, 2004 arrest of Broussard, and a review of relevant NYPD records, the following was learned.

In December 2004, Broussard was on parole pursuant to a conviction for Criminal Sale of a Controlled Substance in the Third Degree. On December 7, 2004, at approximately 10:15 p.m., parole officers, accompanied by NYPD officers, conducted a routine parole compliance visit to the defendant's residence at 1076 Faile Street, Apartment 4C, Bronx, New York. Broussard was in the hallway near the apartment when the parole officers and NYPD officers arrived in front of the apartment. Broussard identified himself, and the parole officers and NYPD entered the apartment. Broussard had consented to allowing the officers to enter the apartment.

11

Parole officers then had Broussard provide a urine specimen for the purpose of testing for narcotics.  Broussard's urine tested positive for marihuana and opiate use, and he acknowledged that he had used marihuana.

After the urine test was performed on Broussard, two parole officers conducted a search of Broussard's bedroom. While searching Broussard's bedroom, a parole officer found a plastic "zip-lock" bag containing about 32 smaller "zip-lock" bags containing what appeared to be marijuana, a 9 mm Hi-Point semi-automatic pistol under the box spring of the bed, and two .380 caliber bullets in a jewelry box on a dresser.

Broussard was then placed under arrest and brought to a police precinct.  There, he was advised of his Miranda rights, which he voluntarily waived.  Broussard then admitted to possession of the firearm found in his bedroom.  It was later determined that a 9mm Hi-Point semi-automatic pistol was not and has never been manufactured in the State of New York.

A review of criminal records pertaining to Broussard revealed that he sustained the following convictions: (i) a

conviction on July 6, 1998, in New York State Supreme Court, Bronx County, for Criminal Sale of a Controlled Substance in the Third Degree;  (ii) a conviction on January 5, 2000, in New York State Supreme Court, Bronx County, for Robbery in the First Degree; and (iii) a conviction on July 15, 1998, in New York State Supreme Court, Bronx County, for Criminal Possession of a Loaded Firearm in the Third Degree.

On December 20, 2004, Broussard was arrested by U.S. Marshals Service and placed in federal custody

**The Relevant Statutory Provisions**

For Count 1, the maximum term of imprisonment is life imprisonment, to be imposed to run consecutively to any other term of imprisonment, pursuant to 18 U.S.C. § 924(j).  For Count 2, the maximum term of imprisonment is 20 years, pursuant to 18 U.S.C. § 1951.  For Count 3, the mandatory minimum term of imprisonment is 7 years and the maximum term of imprisonment is life imprisonment, to be imposed to run consecutively with any other term of imprisonment, pursuant to 18 U.S.C. § 924(c)(1)(A)(ii).  For Count 4, the mandatory minimum term of imprisonment is 5 years and the maximum term of imprisonment is

13

40 years, pursuant to 21 U.S.C. §§ 846, 841(b)(1)(B).  For Count 5, the mandatory minimum term of imprisonment is 15 years, pursuant to 18 U.S.C. §§ 922(g)(1) and 924(e).

For Counts 1 and 3, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than five years per count, pursuant to 18 U.S.C. § 3583(b)(1).  For Counts 2 and 5, if a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years per count, pursuant to 18 U.S.C. § 3583(b)(2).  For Count 4, a mandatory minimum term of at least four years' supervised release is required, pursuant to 21 U.S.C. §§ 846, 841(b)(1)(B).  Such terms of supervised release are to run concurrently, pursuant to 18 U.S.C. § 3624(e).

Defendant is not eligible for probation, pursuant to 18 U.S.C. § 3561(a)(1)-(3).

For Counts 1, 2, 3, and 5, the maximum fine that may be imposed is $250,000 per count, pursuant to 18 U.S.C. § 3571. For Count 4, the maximum fine is $2,000,000, pursuant to 21 U.S.C. §§ 846, 841(b)(1)(B).  A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

14

**The Guidelines**

The November 1, 2010 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).  The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Since Count 1 involves a robbery which resulted in murder, the applicable guideline is § 2A1.1.  As such, pursuant to § 3D1.2(d), all offenses under Chapter Two, Part A cannot be grouped together, and it will form its own group, known as Group 1, as delineated below.  As Count 2 charges Conspiracy to Commit Robberies, the applicable guideline is § 2B3.1.  As such, offenses under that guideline, as they involve separate victims, cannot be grouped together.  According to the Government, the defendant engaged in at least five gun-point robberies.  Thus, each robbery will form its own group, known below as Groups 2 through 6.

Regarding Count 3, the conduct is not grouped under

the guideline calculations below.  Pursuant to 18 U.S.C. §
924(c), this count requires a mandatory and consecutive term of
imprisonment, as specified under "Part D. Sentencing Options,"
to follow any other term of incarceration imposed upon Defendant
based on the guideline calculations below.

Further, while firearms were possessed during the
commission of the various robberies as charged in Count 2, §
2K2.4, Application Note 4 provides that if the defendant has
been convicted of an 18 U.S.C. § 924(c) offense, and "where a
sentence under this section is imposed in conjunction with a
sentence for an underlying offense, any specific offense
characteristic for the possession, use or discharge of an
explosive or firearm is not to be applied in respect to the
guideline for the underlying offense."  Accordingly, the offense
level for most groups is not enhanced with this adjustment.

Regarding Count 4, since the conduct involves separate
harms and the offense level is determined largely on the basis
of the quantity of substance involved, that count will comprise
its own separate group, known as Group 7, below.

Regarding Count 5, since the conduct involves

16

possession of a firearm after three previous convictions for violent felony or serious drug offenses for which the defendant has been convicted under 18 U.S.C. § 924(c), under § 2K2.4, that conduct is not grouped under the guideline calculations below and requires a mandatory and consecutive term of imprisonment, as specified in "Part D. Sentencing Options," to follow any other term of incarceration imposed upon the defendant based on the guideline calculations below.

**Group 1- Count 1**

The guideline for violation of 18 U.S.C. § 924(j) is found in §2A1.1 which directs that the base offense level is 43. There are no adjustments.

**Group 2- Count 2**

The most applicable guideline for violation of 18 U.S.C. § 1951 is found in § 2B3.1, which directs that the base offense level is 20. Because the defendant was convicted of using a firearm during multiple robberies under Count 3, no increase in the offense level pursuant to § 2B3.1(b)(2) is warranted.

17

**Group 3- Count 2**

The most applicable guideline for violation of 18 U.S.C. § 1951 is found in § 2B3.1, which directs that the base offense level is 20.  Because the defendant was convicted of using a firearm during multiple robberies under Count 3, no increase in the offense level pursuant to § 2B3.1(b)(2) is warranted.

**Group 4- Count 2**

The most applicable guideline for violation of 18 U.S.C. § 1951 is found in § 2B3.1, which directs that the base offense level is 20.  Because the defendant was convicted of using a firearm during multiple robberies under Count 3, no increase in the offense level pursuant to § 2B3.1(b)(2) is warranted.

**Group 5- Count 2**

The most applicable guideline for violation of 18 U.S.C. § 1951 is found in § 2B3.1, which directs that the base

18

offense level is 20. Because the defendant was convicted of using a firearm during multiple robberies under Count 3, no increase in the offense level pursuant to § 2B3.1(b)(2) is warranted.

**Group 6- Count 2**

The most applicable guideline for violation of 18 U.S.C. § 1951 is found in § 2B3.1, which directs that the base offense level is 20. Because the defendant was convicted of using a firearm during multiple robberies under Count 3, no increase in the offense level pursuant to § 2B3.1(b)(2) is warranted.

**Group 7- Count 4**

The guideline for a violation of 21 U.S.C. §§ 846, 841(b)(1)(B), and 841(b)(1)(D) is found in § 2D1.1(a)(3). As noted in the Offense Conduct section, Defendant participated in the distribution of at least 100 grams of heroin and 50 kilograms of marihuana.

According to § 2D1.1 Application Note #10, when more

19

than one controlled substance is involved in the offense, each substance must be converted to its equivalent amount of marihuana, and then the quantities are combined to arrive at a single base offense level for the total amount of drugs involved in the offense.

According to the Drug Equivalency Tables, 1 gram of heroin equals 100 kilograms of marihuana.  As such, the total amount of drugs involved in this offense equals 150 kilograms of marihuana.   Pursuant to § 2D1.1(c)(7), between 100 and 4000 kilograms of marihuana designates a base offense level of 26.

Pursuant to § 2B1.1(b)(9)(C), an increase of two levels is warranted because the offense involved sophisticated means.

**Multiple Count Adjustment**

Under § 3D1.4, Defendant gains one unit from Group 1 and no units from Groups 2 through 7.

The greater adjusted offense level is 43.  No further increase in offense level is warranted, so the combined adjusted

20

offense level is also 43.

Based on his plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Based on the instant convictions as well as the prior convictions, as shown in Defendant's criminal history below, Defendant appears to be designated as an Armed Career Criminal within the meaning of § 4B1.4 of the Guidelines. As such and pursuant to the options contained under § 4B1.4(b), it appears that the greatest offense level will result from the application of the Career Offender provisions, as designated under § 4B1.1. Pursuant to § 4B1.1(b), Defendant's offense level will remain at 40, as calculated under Chapters Two and Three of the guidelines. However, pursuant to § 4B1.1(c), since Defendant has been determined to meet both provisions of that section, Defendant's guideline range is subject to the enhanced penalties

21

under § 4B1.1(c)(2).

Accordingly, the applicable offense level is 40.

**Criminal History**

On January 31, 1987, Defendant was arrested and charged with criminal possession of stolen property in the third degree. On November 10, 1987, he was adjudicated as a youthful offender in the Bronx County Supreme Court, Bronx, NY and sentenced to six months' imprisonment and five years' probation. Pursuant to § 4A1.2(d)(2), this conviction warrants zero criminal history points.

On February 11, 1987, Defendant was arrested and charged with criminal possession of stolen property in the third degree. On November 10, 1987, he was adjudicated as a youthful offender in the Bronx County Supreme Court, Bronx, NY and sentenced to six months' imprisonment and five years' probation. Pursuant to § 4A1.2(d)(2), this conviction warrants zero criminal history points.

On March 31, 1987, Defendant was arrested and charged

with robbery in second degree, assault in the second degree, robbery in the third degree, reckless endangerment in the first degree, criminal mischief in the second degree, leaving an accident resulting in death/injury, criminal mischief: intent to damage property (two counts), unauthorized use of a vehicle: without owner consent, resisting arrest, reckless driving, and unlawful possession of marihuana.  On October 20, 1987, he was adjudicated as a youthful offender in the Bronx County Supreme Court, Bronx, NY and sentenced to six months' imprisonment and five years' probation.  Pursuant to § 4A1.2(d)(2), this conviction warrants zero criminal history points.

On July 6, 1991, Defendant was arrested and charged with CDS: possession with intent to distribute cocaine and CDS: Packaging Material.  On December 11, 1991, he was sentenced to one to three years' imprisonment with a suspended sentence and time served in the Circuit Court for Baltimore City, Maryland. He was also sentenced to three years' supervised probation. Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On April 1, 1993, Defendant was arrested and charged with CDS: possession of cocaine and handgun or person:

carry/wear.  On July 29, 1993, he was sentenced to one year's imprisonment in the Circuit Court for Baltimore City, Maryland. He was also sentenced to three years' supervised probation. Pursuant to §§ 4A1.1(b) and 4A1.2(e)(2), this conviction warrants two criminal history points.

On April 18, 1994, Defendant was arrested and charged with CDS: possession of cocaine.  On November 9, 1994, he was sentenced to four years' imprisonment with a suspended sentence and time served in the Circuit Court for Baltimore City, Maryland.   He was also sentenced to five years' supervised probation.   Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On June 19, 1996, Defendant was arrested and charged with possession of a forged instrument in the third degree.  On July 1, 1996, he was sentenced in the Bronx County Supreme Court, Bronx, NY to time served.  Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On December 23, 1996, Defendant was arrested and charged with criminal possession of a controlled substance in

24

the seventh degree.   On December 27, 1997, he was sentenced in the Bronx County Supreme Court, Bronx, NY to time served and six months' suspension of his license.   Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants one criminal history point.

On January 5, 1997, Defendant was arrested and charged with criminal sale of a controlled substance in the third degree.   On July 15, 1998, he was sentenced in the Bronx County Supreme Court, Bronx, NY to one to three years' imprisonment. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

On March 7, 1997, Defendant was arrested and charged with criminal possession of a controlled substance in the seventh degree.   On February 3, 1998, he was sentenced in the Bronx County Supreme Court, Bronx, NY to conditional discharge, one day of community service, and six months' suspension of his license.    Pursuant to §§ 4A1.1(c) and 4A1.2(e)(2), this conviction warrants zero criminal history points.

On March 19, 1997, Defendant was arrested and charged with criminal possession of a loaded firearm in the third

degree.  On July 15, 1998, he was sentenced in the Bronx County
Supreme Court, Bronx, NY to one year's imprisonment.  Pursuant
to §§ 4A1.1(b) and 4A1.2(e)(2), this conviction warrants two
criminal history points.

On September 18, 1997, Defendant was arrested and
charged with criminal possession of a controlled substance in
the seventh degree.  On February 3, 1998, he was sentenced in
the Bronx County Supreme Court, Bronx, NY to conditional
discharge, five days of community service, and six months'
suspension of his license.  Pursuant to §§ 4A1.1(c) and
4A1.2(e)(2), this conviction warrants zero criminal history
points.

On March 29, 1998, Defendant was arrested and charged
with criminal sale of a controlled substance in the third
degree.  On July 15, 1998, he was sentenced in the Bronx County
Supreme Court, Bronx, NY to one to three years' imprisonment.
Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction
warrants three criminal history points.

On December 1, 1998, Defendant was arrested and
charged with robbery in the first degree, criminal possession of

26

a weapon in the fourth degree, and criminal possession of stolen property in the fifth degree. On February 10, 2000, he was sentenced in the Bronx County Supreme Court, Bronx, NY to three to six years' imprisonment. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

On December 1, 1998, Defendant was again arrested and charged with robbery in the first degree, criminal possession of a weapon in the fourth degree, and criminal possession of stolen property in the fifth degree. On February 10, 2000, he was sentenced in the Bronx County Supreme Court, Bronx, NY to three to six years' imprisonment. Pursuant to §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants three criminal history points.

At various times during which the instant offenses were committed, Defendant was serving multiple terms of probation. As such and pursuant to § 4A1.1(d), two points are added.

A total of 22 criminal history points establishes a Criminal History Category of VI, pursuant to the table at

27

Chapter 5, Part A, of the Guidelines.  In addition and pursuant to the directives designated under Armed Career Criminal status at § 4B1.4(c), Defendant's Criminal History Category must also be VI.

Based on a total offense level of 40 and a Criminal History Category of VI, pursuant to the directives contained under § 4B1.1(c)(2), the guideline range derived under § 4B1.1(c)(2)(A) yields the highest guideline range of imprisonment, calculated to be 444 months to life imprisonment, to be followed by all mandatory and consecutive sentences, as noted above.

For Counts 1 and 3, the guideline range for a term of supervised release is at least three years but not more than five years per count, pursuant to § 5D1.2(a)(1).  For Counts 2 and 5, the guideline range for a term of supervised release is at least two years but not more than three years per count, pursuant to § 5D1.2(a)(2).  For Count 4, the guideline range for a term of supervised release is at least three years but not more than five years or the minimum required by statute, which in this case is four years, pursuant to § 5D1.2(b).

28

The defendant is not eligible for probation, pursuant to § 5B1.1(b)(1)-(3).

The fine range for the instant offense is from $25,000 to $2,000,000, pursuant to § 5E1.2(c)(1) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,157.88 to be used for imprisonment, a monthly cost of $311.94 for supervision, and a monthly cost of $1,990.13 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in <u>Booker</u>, 543 U.S. 220, and the Second Circuit's decision in <u>Crosby</u>, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but

not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Broussard will be sentenced to life imprisonment and five years' supervised release.

For Count 1, Broussard will be sentenced to life imprisonment, to be imposed consecutively to all other imposed terms of imprisonment. For Count 2, Broussard will be sentenced to 240 months' imprisonment. For Count 3, Broussard will be sentenced to life imprisonment, to be imposed consecutively to all other imposed terms of imprisonment. For Count 4, Broussard will be sentenced to 480 months' imprisonment. For Count 5, Broussard will be sentenced to 180 months' imprisonment.

In terms of supervised release, for Counts 1 and 3, Defendant will be sentenced to five years' supervised release.

30

For Counts 2 and 4, Defendant will be sentenced to three years'
supervised release.  For Count 4, Defendant will be sentenced to
five years' supervised release.  All supervised release terms
shall run concurrently.

Broussard is directed to report to the nearest United
States Probation Office within seventy-two hours of release to
commence his term of supervised release.  It is recommended that
Broussard be supervised by the district of his residence.

As mandatory conditions of his supervised release,
Broussard shall:  (1) not commit another federal, state, or
local crime; (2) not illegally possess a controlled substance;
(3) not possess a firearm or destructive device; (4) cooperate
in the collection of DNA as directed by the probation officer,
and (5) refrain from any unlawful use of a controlled substance.
The defendant shall submit to one drug testing within 15 days of
placement on probation or supervised release and at least two
unscheduled drug tests thereafter, as directed by the probation
officer.

Furthermore, the standard conditions of supervision
(1-13), set forth in the judgment, shall be imposed with the

31

additional special conditions:

In consideration of all the factors set forth in 18
U.S.C. § 3572(a), it does not appear that the Defendant is able
to pay a fine, and so the fine in this case shall be waived.

As the result of committing the crime of violence
alleged in Count 2 of this Information, Defendant shall forfeit
to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and
28 U.S.C. § 2461, all property, real and personal, that
constitutes or is derived from proceeds traceable to the
commission of the offense, including but not limited to a sum in
United States currency representing the amount of proceeds
obtained as a result of the offense.

As a result of committing the controlled substance
offense alleged in Count 4 of this Information, Defendant shall
forfeit to the United States pursuant to 21 U.S.C. § 853, any
and all property constituting or derived from any proceeds
Defendant obtained directly or indirectly as a result of the
said violation and any and all property used or intended to be
used in any manner or part to commit and to facilitate the
commission of the violation alleged in Count 4 of the

Information, including but not limited to a sum in United States currency representing the amount of proceeds obtained as a result of the offense.

A special assessment of $500, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for April 28, 2011.

It is so ordered.

New York, NY
April _26_ , 2011

ROBERT W. SWEET
U.S.D.J.

33